## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Matoyia Calip,**

      *Plaintiff,*

v.

**Trans Union, LLC,**

      *Defendant..*

Case No.:    _____

Ad Damnum: **$4,000 + Atty Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Matoyia Calip** ("**Ms. Calip**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Trans Union, LLC** ("**Trans Union**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Calip against Trans Union for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.      Trans Union is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and Section 48.193, Florida Statutes.

4.      Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5.      **Ms. Calip** is a natural person residing in the city of Largo, Pinellas County, Florida, and is a *Consumer* as defined by 15 U.S.C. § 1681a(c). She was previously known as Matoyia Gordon.

6.      **Trans Union** is a Delaware limited liability company, with a primary business address of **555 West Adams St., Chicago, IL 60661.**

7.      Trans Union is registered to conduct business in the state of Florida, where its registered agent is **The Prentice-Hall Corporation System, Inc., 1201 Hays St., Tallahassee, FL 32301.**

8.      Trans Union is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in Trans Union, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

9.      Ms. Calip has never owned her own home.

10.     In an effort to improve her credit scores so that she could take advantage of down-payment assistance offered by the State of Florida for first time home buyers, Ms.

Calip obtained a secured Visa credit card marketed as "OpenSky" though Capital Bank, N.A. ("**Capital Bank**").

11.     Secured credit cards are typically utilized by consumers who are looking to establish, or re-establish, credit history, and do not yet have a credit history which would allow them to obtain traditional, unsecured lines of credit.

12.     Ms. Calip provided a $300 deposit to Capital Bank and later received a Visa "OpenSky" credit card.

13.     Capital Bank outsources the servicing of its OpenSky credit card to Cardworks Servicing, LLC ("**Cardworks**").

14.     Cardworks reports the payment history of the OpenSky accounts it services to several nationwide CRAs, including Trans Union.

15.     When reporting information to nationwide CRAs like Trans Union, data furnishers prepare reports using the Metro 2 language created and maintained by the *Consumer Data Industry Association* ("**CDIA**").

16.     Metro 2 contains a series of two-digit "Account Status" codes whereby a data furnisher can report the status of an account, such as "Paid or closed account/zero balance."

17.     Metro 2 also contains a series of single-digit "Payment Rating" codes.

18.     The "Payment Rating" properly identifies whether the account is current, past due, in collections or charged off within the activity period being reported.

19.     In July 2019, Cardworks, on behalf of Capital Bank, reported Ms. Calip's account as "30 to 59 days past due" to Trans Union. **SEE PLAINTIFF'S EXHIBIT A.**

20.     Ms. Calip learned of this reporting in August 2019 and was extremely frustrated and anguished to learn that the credit card she obtained to help build her credit scores was now *hurting* her credit scores and making her dream of home ownership seem out-of-reach.

21.     Ms. Calip called Cardworks and immediately paid off the remaining balance of $48 and closed her account.

22.     Cardworks later acknowledged this in a letter dated October 21, 2019, stating "Please be advised that as of the above referenced date, your account is closed and reflects a zero balance. In addition, we received your last payment in the amount of $48.00 on August 14, 2019." **SEE PLAINTIFF'S EXHIBIT B.**

23.     Cardworks updated its reports of the account to Trans Union to reflect an "Account Status" of "13" – indicating of "Paid or closed account/zero balance." **SEE PLAINTIFF'S EXHIBIT C.**

24.     Cardworks also updated its reports of the account to Trans Union with a Payment Rating of "0" – indicating a current account. *Id.*

25.     However, for unknown reasons, Trans Union continued to report Ms. Calip's account with an Account Status of "Account 30 Days Past" – falsely indicating that Ms. Calip remained 30 days late on the account.

<u>**First Trans Union Dispute**</u>

26.     On or about October 12, 2019, Ms. Calip disputed Cardworks' reporting to Trans Union, stating that the account was not past due and could not be delinquent as of August 2019 because the entire balance had been paid off well before then.

27.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), upon receipt of Ms. Calip's dispute, Trans Union was required to conduct a reasonable investigation into the dispute.

28.     Trans Union sent Cardworks an *Automated Consumer Dispute Verification* request ("**ACDV**") and asked Cardworks to make a reasonable investigation into the dispute.

29.     The ACDV was sent via e-OSCAR, an online system used by CRAs to communicate with furnishers of data, including Cardworks.

30.     On or about October 21, 2019, CardWorks submitted its ACDV Response to Trans Union. ***Id.***

31.     In its ACDV Response, Cardworks, on behalf of Capital Bank, again indicated an Account Status code of "13," indicating "Paid or closed account/zero balance." ***Id.***

32.     However, for unknown reasons, Trans Union *did not* update its report of the Capital Bank tradeline to reflect a status of "paid/closed." **SEE PLAINTIFF'S EXHIBITS D and F.**

33.     Instead, for unknown reasons, Trans Union continued to report that Ms. Calip's account was 30 to 59 days past due, despite this being contrary to the information it received from the furnisher of data. ***Id.***

34.     Trans Union's error was clear and obvious from a cursory glance at the information it was reporting. An account cannot have a pay status of 30 to 59 days past due while simultaneously reflecting that the account was closed by the consumer with a current payment status.

35.     On information and belief, Trans Union's investigation into Ms. Calip's dispute consisted of an entirely automated two-step process. First, Trans Union furnished an ACDV to Cardworks, then, upon receipt of Cardworks; response, Trans Union utilized an automated system to verify the basic personal information contained in the ACDV response, such as name and Social Security number, against Trans Union's own records.

36.     Thus, Trans Union conducted no human review of its own into Ms. Calip's review.

37.     Had any human reviewed Ms. Calip's account, Trans Union would have noticed that the account was reporting with a payment status of "paid as agreed" but simultaneously reporting a status for the current month of 30 to 59 days past due.

38.      Trans Union therefore clearly failed to conduct a reasonable investigation in Ms. Calip's dispute, as it is axiomatic that an account which is paid and closed with a $0 balance and reflects a current payment status of "paid as agreed" cannot also be 30 to 59 days late.

39.     The error was not introduced by the data furnisher but by Trans Union itself. As such, not only did Trans Union fail to make a reasonable investigation, Trans Union itself caused the insertion of erroneous information into Ms. Calip's credit report and file.

## **Second Trans Union Dispute**

40.     Ms. Calip again disputed the Capital Bank tradeline to Trans Union on or about November 17, 2019.

41.     Trans Union, once again, sent Cardworks an ACDV, thereby asking it to investigate Ms. Calip's dispute.

42.    On or about November 27, 2019, Cardworks completed its investigation and returned the ACDV to Trans Union.

43.    In its response, Cardworks once again indicated an Account Status of "13" indicating "Paid or closed account/zero balance." **SEE PLAINTIFF'S EXHIBIT E.**

44.    However, Trans Union, once again, did not update the tradeline to reflect an Account Stratus of paid/closed.

45.    Instead, Trans Union *continued to report that the account was 30 to 59 days past due.* **SEE PLAINTIFF'S EXHIBIT F.**

46.    Once again, Trans Union's investigation consisted solely of the furnishing of an ACDV to Cardworks and the automated review of certain personal information of Ms. Calip's upon receipt of Cardworks' response.

47.    Trans Union once again failed to conduct a reasonable investigation into Ms. Calip's dispute. Any reasonable investigation would have determined that the "Account Status" of 30 to 59 days late was incorrect and required updating, as the account was paid and closed, with the reported payment status reflecting as much.

### Trans Union's Errant Consumer Disclosure

48.    On or about October 11, 2019, Ms. Calip requested a copy of her consumer credit disclosure from Trans Union.

49.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Calip's request, Trans Union was required to "clearly and accurately" disclose all information in Ms. Calip's file at the time of her request, with the limited exception that her Social Security number could be truncated upon request.

50.     Trans Union provided an electronic copy of Ms. Calip's *Consumer Disclosure* to her at her home address in Largo, Florida.

51.     Trans Union's Disclosure included the Capital Bank tradeline reported by Cardworks. **SEE PLAINTIFF'S EXHIBIT A.**

52.     Trans Union indicated that as of September 22, 2019, the Capital Bank account had an account status of "30 Days Past" – indicating the account is 30 to 59 days past due.

53.     Trans Union simultaneously indicated that the balance of the Capital Bank account was $0 in September 2019.

54.     An account cannot be simultaneously past due and have a $0 balance.

55.     Further, on information and belief, CardWorks had already updated its tradeline to indicate that the Capital Bank account was paid and closed by Ms. Calip.

56.     Trans Union's file regarding Ms. Calip thus indicated that the account should be reported with an Account Status code of "13."

57.     Trans Union's failure to incorporate this Account Status code into its disclosure to Ms. Calip violates 15 U.S.C. § 1681g(a).

58.      On or about November 16, 2019, Ms. Calip again requested a copy of her consumer credit disclosure from Trans Union.

59.     Trans Union again provided a consumer disclosure to Ms. Calip at her home address in Largo, Florida. **SEE PLAINTIFF'S EXHIBIT D.**

60.     Trans Union's November Consumer Disclosure also contained the Capital Bank tradeline.

61.    Trans Union again indicated that the account had a status of "30 Days Past" – meaning the account was 30 to 59 days past due.

62.    For the aforementioned reasons, this information is obviously false.

63.    Further, as of November 16, 2019, Trans Union was in the possession of an ACDV Response from CardWorks which clearly indicated an Account Status code of "13" – thereby instructing Trans Union to report the Capital Bank account as "Paid/Closed."

**SEE PLAINTIFF'S EXHIBIT C.**

64.    This account status was therefore clearly in Trans Union's file regarding Ms. Calip at the time of its disclosure to Ms. Calip on November 16, 2019.

65.    Trans Union therefore again failed to clearly and accurately disclose all of the information in its file to Ms. Calip upon her request, in violation of 15 U.S.C. § 1681g(a).

66.    Were it not for Trans Union's false and defamatory reporting, Ms. Calip would be able to discontinue renting a home for $1,300 per month, purchase her own home, and be building equity in her own homestead.

67.    Trans Union's false reporting has caused Ms. Calip to suffer great mental distress, since it is keeping her from taking advantage of a first-time home buyer's program to purchase her own home.

68.    The failure of an entity to provide full, accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III; *see, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable

injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied."

69.    Trans Union's failures to provide clear and accurate disclosures to Ms. Calip were the result of an error in its automated systems that it has known about for years and done nothing to correct.

70.    Further, the false indication that an account is 30 days late, rather than paid and closed, causes significant damage to a consumer's credit scores.

71.    Ms. Calip has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees and/or has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA

72.    Ms. Calip adopts and incorporates paragraphs 1 – 71 as if fully stated herein.

73.    Trans Union violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Calip's request for her consumer disclosure, on two separate occasions, by failing to clearly and accurately disclose to Ms. Calip, a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed an account reported by Cardworks, on behalf of Capital Bank, as 30 to 59 days past due, when Trans Union's file contained information clearly indicating that this was false, and the account had actually been paid and closed by Ms. Calip with a $0 balance.

74.     Trans Union acted willfully, or with a reckless disregard for Ms. Calip's rights, in providing inaccurate and incomplete information in Ms. Calip's disclosure, as it knew of the issues with its automated systems,  which have been identified and disputed by other consumers for years.

75.     Trans Union violated 15 U.S.C. § **1681i(a)(1)(A)** in that Trans Union failed to conduct a reasonable reinvestigation regarding the disputed Capital Bank tradeline when it twice failed to make any independent evaluation of Ms. Calip's dispute. A reasonable investigation would have revealed that Trans Union was errantly reporting the Capital Bank tradeline as 30 days past due, contrary to the data furnished by CardWorks, which indicated that the account was paid and closed with a $0 balance.

76.     Trans Union made no independent human evaluation of the crux of the disputes, as evidenced by the fact that Trans Union continued to report that an account was 30 days past due, while simultaneously bearing a $0 balance. Indeed, Trans Union's flawed systems actually caused the blatantly false, defamatory, and logically impossible information to be incorporated into Ms. Calip's report.

77.     The fact Trans Union built such a flawed system capable of causing such an obvious and rudimentary error is evidence of its failure to utilize reasonable procedures to ensure maximum possible accuracy of the reports it produces.

78.     Each dispute constitutes a separate request for investigation.

79.     As a result of Trans Union's failures, Ms. Calip's credit report and scores have been damaged, impacting her ability to obtain a home loan, credit, and insurance on favorable terms.

80.    Trans Union's conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties and consumer rights under the FCRA.

81.    Trans Union is liable to Ms. Calip pursuant to the FCRA for statutory damages of up to $1,000 *per incident*.

**WHEREFORE,** Ms. Calip respectfully requests this Honorable Court to enter judgment in her favor, and against Trans Union, for:

a.    The greater of Ms. Calip's actual damages or statutory damages of **$1,000** per incident (for a total of $**4,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**JURY TRIAL DEMAND**

Ms. Calip hereby demands a jury trial on all issues so triable.

Respectfully submitted on April 20, 2020 by:

SERAPH LEGAL, P. A.

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
BGeiger@SeraphLegal.com
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
Phone: (813) 567-1230
Fax: (855) 500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    Ms. Calip's Trans Union Consumer Disclosure, October 11, 2019, Excerpt
B    Cardworks' October 21, 2019 Letter to Ms. Calip
C    Cardworks' Response to Trans Union's ACDV, October 21, 2019
D    Ms. Calip's Trans Union Consumer Disclosure, November 16, 2019, Excerpt
E    Cardworks' Response to Trans Union's ACDV, November 27, 2019
F    Trans Union's Dispute Results to Ms. Calip, December 24, 2019